Calhoun et al. *v.* Rail et al.

JOHN C. CALHOUN et al. *v.* CHRISTIANA M. RAIL et al.

The statute (Hutch. Code, 670, § 112; Ib. 673, § 2) requires that real and personal estate shall be divided by the same commissioners, but it does not require the division of both to be made and reported at the same time; a division of the personal property, omitting the lands, if regular in other respects, is good *pro tanto*.

In the division of property, the statute requires not only that the partition shall be made and reported to the court, but before it takes effect and confers title on the parties, it must be confirmed by the court.

In such cases, the power to equalize the shares of property, by requiring the difference to be paid in money by those receiving more valuable portions, is an incident to the general power of the court to cause an equal division to be made.

IN error from the probate court of Claiborne county; Hon. James A. Maxwell, probate judge of Claiborne county.

On the 25th May, 1846, Christiana M. Rail and Calista Julia Rail, infants, by M. N. Hulbert, their next friend, filed their petition in the probate court of Claiborne county, showing that John Rail, their father, had devised to Mary Hume, their sister, a tract of land for her life; and at her death, without issue, the said land was devised to the surviving children of said John Rail. That said Rail also bequeathed to said Mary Hume, and to the children of his deceased son-in-law, E. W. Calhoun, twenty negro slaves; one half for the separate use and benefit of said Mary Hume, and the other half to the children of said Calhoun. And in case of the death of said Mary Hume without issue, then her share of said negroes should go to the surviving children of said John Rail. That said Mary Hume has died without issue. That John C. Calhoun and Mary H. Calhoun are the surviving children of E. W. Calhoun; and no division of said negroes has ever been made between them and said Mary Hume.

That Mrs. Amelia A. Young, wife of Thomas Young, and petitioners are the only surviving children of said John Rail; and that said negroes are in the possession of said Young.

That petitioners are entitled severally to one third part of the land and negroes so devised and bequeathed to the said Mary Hume for life; and they pray for the appointment of commissioners to make a division of said land and negroes accordingly. They make Dotson and Shelby, executors of Rail, Thomas and Amelia Young, and John C. and Mary H. Calhoun, defendants to the petition.

Proceedings were regularly had on the above petition, and at December term, 1850, the probate court made a decree, whereby five commissioners were appointed to divide said negroes and their increase, one half to be allotted to said John C. and Mary H. Calhoun, and the other half to be allotted to Mrs. Amelia A. Young and petitioners, C. M. and C. J. Rail; and when said distribution shall have been made, then to make an equal division between said Amelia, Christiana, and Calista, of the share of said negroes that may upon said first division be allotted to them. And said commissioners were further ordered to lay off, in pursuance of the directions of the will of said John Rail, from the south end of his farm adjoining W. Fife, 510 acres, which were by said will devised to said Mary Hume; and when laid off, to divide the same equally between the said Amelia, Christiana, and Calista, an equal one third part to each.

At February term, 1851, the commissioners presented to the court a report of the division of the negroes, which is dated and sworn to on the 24th of February, 1851. It states on its face that the division was made January 2, 1851. It shows that the whole number of negroes was first divided into two lots or shares, of which lot No. 1, valued at $4,600, was assigned to said John C. and Mary H. Calhoun; and lot No. 2, valued at $4,525, was assigned to said Amelia, Christiana, and Calista; and to equalize said shares, the commissioners proceeded to award that said John C. and Mary H. Calhoun should pay to said Amelia, Christiana, and Calista the sum of $37.50, thereby settling the value of each share at $4,562.50.

The commissioners then subdivided said lot 2 into three parts, and assigned lot 1, valued at $1,550, to said Christiana; lot 2, valued at $1,500, to said Calista; and lot 3, valued at

$1,475, to said Amelia; and did award that said Christiana should pay to said Calista the sum of $8.33, and to said Amelia the sum of $33.33, to equalize the shares, at $1,508.33.

John C. and Mary H. Calhoun filed exceptions to the confirmation of this report.

1. Because the commissioners have not divided the land mentioned in the decree, or made any report in relation thereto.

2. Because the negro Stepney, particularly mentioned in the petition and decree, was not included in the division, or named in the report. That when the division was made, on the 2d January, 1851, said negro had run away, and was then out, but was recovered by said Young on the 31st January, 1851, and was in his possession long before the drawing up or signing said report, ready to be divided, of which the said commissioners had full notice; and that said negro is now in possession of Young, ready to be included in said division.

3. Because a negro woman named Mary, allotted to exceptants, and valued at $450, shortly after said 3d of January, and before any report or statement of said division had been drawn up or signed, and before she became the property of exceptants by virtue of said division, to wit, on the 18th January, 1851, died; whereby the share allotted to exceptants became of less value than the other share by the sum of $450.

These exceptions were overruled by the court, and this writ of error prayed.

*H. T. Ellett* for appellants.

The law requires the land and negroes to be divided by the same commissioners. Hutch. 670, § 112; Ib. 673, § 2.

One of the negroes was not included in the report of the commissioners at the time it was made, having been run away at the time the commissioners made the allotment of the negroes. It was erroneous to report a division of the negroes without including this one.

A negro allotted to the appellants by the commissioners died more than a month before the report was drawn, and of course before it was approved or confirmed by the court. Until it is

approved by the court, the report is not final and conclusive, and no title to the property passes.   Hutch. Co. 670, § 112.

The commissioners had no jurisdiction but to divide the property into equal shares, yet the report shows that the shares of the property are unequal in value.   The award of money by the commissioners is void, they having no such power, and the probate court can render no judgment on it.

*W. S. Wilson* and *J. B. Coleman* for appellees.

We presume it will be competent at any future period for the commissioners to divide the land, for the statute does not require them to divide the land and negroes at the same time.

The failure of the commissioners to include the runaway negro in this report, is no good reason to invalidate the division of the whole estate.

The share of one of the parties having been diminished in value by the death of a slave allotted, this court will not interfere to compel the other parties to compensate the appellants for a loss occasioned by the act of God.   It is a maxim, that " the act of God worketh no man an injury."

The court has discretionary power to authorize an equal division of the property to be made in the most equitable and certain manner.

Mr. Justice HANDY delivered the opinion of the court.

It appears by the record that the probate court on petition, appointed commissioners to divide certain lands and slaves belonging to the estate of John Rail, deceased, according to his will, among the devisees and legatees.   Upon the return of the report of the commissioners to the probate court, the plaintiffs in error, who were parties in the division, filed exceptions to the report, which were overruled and the report confirmed, and thereupon the matter is brought here by writ of error.

The first ground of exception is, that the commissioners having been appointed to divide both lands and slaves, made partition of the slaves only.   It is true, the law requires that the real and personal estate shall be divided by the same commissioners in such cases.   Hutch. 670, § 112; Ib. 673, § 2.   But

there is nothing requiring the division of both to be made or reported at the same time. The division of one of the species of property can have no effect upon the division of the other, and no other object seems to have been in contemplation by the second statute, than to save expense by having the whole property divided by the same set of commissioners. But where the commissioners have made division of the personal property, omitting the lands, that of itself is no ground for setting aside their report. If regular in other respects, it is good *pro tanto ;* otherwise, the useless expense would be incurred of having a new division made when that already made was of itself just and unobjectionable.

The second ground of objection is, that one of the slaves who was run away at the time the division was made, but returned before the report was made and returned, was not included in the division. We do not think that this would be, of itself, a sufficient ground for setting aside the report; but inasmuch as a new division will have to be made for another reason, this objection can be obviated when the new division comes to be made.

The third ground of exception was, that one of the slaves allotted to the parties excepting, died before the report of division was drawn up or signed by the commissioners, and of course before it was returned to and confirmed by the court. This is admitted to be true, and it is also admitted, that on the day of the division, the slaves were delivered by the commissioners to the respective parties to whom they were allotted, including the slave in question. It does not appear that the death of the slave was occasioned by any fault or misconduct of the party to whom she was allotted. The question, then, arises whether the party to whom the slave was allotted should bear the loss, or whether it should be borne equally by all the parties, and a new division made.

It is insisted in behalf of the defendants in error, that the condition of the property at the time the division was made, must determine the question whether the division should be confirmed by the court; and that if the division was just and proper at that time, it should not be set aside for casualties occurring

Calhoun et al. *v.* Rail et al.

afterwards. This would be true, if the mere act ascertaining the shares of the respective parties, even accompanied by delivery of possession to them, conferred a title. But such is not the case. The law requires not only that the partition shall be made and reported to the court, but before it takes effect and confers title on the parties, it must be approved and confirmed by the court. It is true that the division, when confirmed without objection, has relation back to the time it was made. But here, exceptions upon the ground under consideration were taken before the confirmation, and no title to the slave having then been perfected by the division, and the loss having occurred without any fault of the party to whom the slave was allotted, it was proper to consider whether, under this altered state of the property, the division should stand. The matter is not affected by the mere fact that the slave was delivered to the party by the commissioners. No such right existed in the commissioners. The property was in law in charge of the executors of the deceased until the division was consummated by the confirmation of the report, and then only did the parties become invested with complete ownership.

Under these circumstances we are of opinion, that the loss should fall equally on all the parties, and that this exception should have been allowed.

The fourth exception is, that, in making the division, the commissioners awarded the payment of small sums of money by some of the parties to the others, in order to equalize the shares; and, it is said, the commissioners had no power to do more than to make an equal division of the property. The probate court is clothed with full jurisdiction to appoint commissioners to the end that an equal division of the property may be made. It often occurs that a division exactly equal is impracticable. Must the power to make division fail in such cases? It would appear not; and we are disposed to hold that the power to equalize the shares by requiring the difference to be paid in money by those receiving more valuable portions, is an incident to the general power of the court to cause an equal division to be made; and that it should be exercised in cases where it appears by the report of the commissioners that other-

wise an equal division was impracticable. This power in such matters was possessed by the chancery court; and it would seem that the legislature, in conferring upon the probate court jurisdiction over the subject, must have conferred this incidental power, without which the general jurisdiction would, in most cases, be impracticable. It is no objection to the exercise of this power, that the probate court could not render a decree against the party for the money. The court has control of the property, and can order it to be delivered over upon terms; and in such cases, it would possess the same power to award the payment of money when absolutely necessary to the division, that it would have to award the payment of the costs of division by the parties. In each case it would be a charge upon the property unless otherwise paid.

Upon the matter contained in the third exception, the order of the probate court disallowing that exception, and confirming the report, is reversed, and the case remanded for further proceedings, upon the principles herein stated.